# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY BUFORD, | CASE NO. 1:00-CV-06496-AWI-SMS-P |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING SANCTIONS UP TO AND INCLUDING DISMISSAL OF THIS ACTION BE IMPOSED ON PLAINTIFF FOR ACTING BAD FAITH (Doc. 198) |
| v. | |
| DR. VANG, et al., | |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |
| _____/ | |

I.    Findings and Recommendations Recommending Sanctions be Imposed on Plaintiff for Acting in Bad Faith

    A.    Procedural History

        Plaintiff Timothy Buford ("plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Although plaintiff is incarcerated and proceeding pro se, plaintiff is not an inexperienced litigator in this court. To date, plaintiff has filed twenty-two actions in the Eastern District of California,[1] and his litigiousness and pursuit of claims lacking in merit has caused him to be subject to 28 U.S.C. § 1915(g), which precludes him from proceeding in forma pauperis in any civil action or appeal unless he is in "imminent danger of serious physical injury."[2]

///

---

[1] The court takes judicial notice of its docket reflecting the actions filed by plaintiff in this district.

[2] The court takes judicial notice of court documents 5 and 7 in case number 1:03-CV-6138-OWW-LJO (PC) Buford v. Ott.

1

1   This action is proceeding on plaintiff's amended complaint, filed September 6, 2001, against

2   defendant Broom ("defendant") under section 1983 for use of excessive physical force in violation

3   of the Due Process Clause, and under California law for assault and battery and intentional infliction

4   of emotional distress.  (Docs. 22, 28, 31.)  The claims in this action arose from an incident which

5   allegedly occurred on April 4, 2000, at the Fresno County Jail following plaintiff's arrest.  (Doc. 22.)

6   Defendant was a sergeant at the jail at the time of the incident.  (Id.)

7   The court has inherent power to sanction parties or their attorneys for improper conduct.

8   Chambers v. Nasco, Inc., 501 U.S. 32, 43-46 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752,

9   766 (1980); Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).  The imposition of sanctions under

10  the court's inherent authority is discretionary.  Air Separation, Inc. v. Underwriters at Lloyd's of

11  London, 45 F.3d 288, 291 (9th Cir. 1995).  The court's "inherent power 'extends to a full range of

12  litigation abuses.'"  Fink, 239 F.3d at 992 (quoting Chambers, 501 U.S. at 46-47).  However, in order

13  to sanction a litigant under the court's inherent powers, the court must make a specific finding of

14  "bad faith or conduct tantamount to bad faith."  Fink, 239 F.3d at 994.  Although mere recklessness

15  is insufficient to support sanctions under the court's inherent powers, "recklessness when combined

16  with an additional factor such as frivolousness, harassment, or an improper purpose" is sufficient.

17  Id. at 993-94.  A litigant may be sanctioned for acting for an improper purpose, even if the act was

18  "a truthful statement or non-frivolous argument or objection."  Id. at 992.  "[I]nherent powers must

19  be exercised with restraint and discretion."  Chambers, 501 U.S. at 44.

20  On June 23, 2004, the undersigned issued a Findings and Recommendations ("F&R")

21  recommending in relevant part that plaintiff be ordered to show cause why a formal reprimand and

22  monetary sanctions should not be imposed against him for his bad faith conduct relating to (1) his

23  opposition to defendant's motion for an order compelling him to re-serve an opposition brief, (2) his

24  subsequent failure to concede his erroneous position regarding service of the opposition brief, and

25  (3) his service of a filing on a nonparty rather than on defendant's counsel despite previously being

26  warned against making that very error.  (Doc. 109.)  On February 8, 2005, the Honorable Robert E.

27  Coyle adopted the F&R in full, and on April 19, 2006, the undersigned issued an Order to Show

28  Cause.  (Docs. 158, 198.)  In addition to addressing the sanctionable conduct set forth in the F&R

of June 23, 2004, the Order to Show Cause also set forth additional conduct by plaintiff which occurred after the issuance of the F&R and the order adopting the F&R, which the court believed merited sanctions.  (Doc. 198.)

Pursuant to the Order to Show Cause, plaintiff was (1) notified the court was considering sanctions against him for acting in bad faith, (2) notified of the basis for the sanctions and the type of sanctions, and (3) provided with the opportunity to be heard.  (Id.)  Plaintiff was ordered to file a response within thirty days, subject to a ten-page limit not including exhibits or a declaration.  (Id.)  Defendant was provided with the opportunity to file a response within thirty days from the date of service of plaintiff's response, also subject to the ten-page limit.  (Id.)  Both parties were placed on notice via the order that no further response beyond one responsive brief each would be permitted.  (Id.)  After obtaining an extension of time, plaintiff filed a response on June 19, 2006, and defendant filed a response on July 14, 2006.  (Docs. 206-208.)

      B.      Plaintiff's Response to the Order to Show Cause

            1.      Service of Filings on Attorney General's Office Rather than County Counsel

The first two incidents giving rise to the possible assessment of sanctions against plaintiff involved lack of service of two filings on defendant's counsel, in December of 2003 and April of 2004.

                  a.      Plaintiff's Opposition to Defendant's Motion to Compel Service of Opposition Brief, and Subsequent Failure to Concede Erroneous Position

The first incident involved plaintiff's failure to serve his opposition to defendant's vexatious litigant motion on defendant's counsel and his subsequent failure to concede his clearly erroneous position on the matter.  The relevant filings are set forth as follows.  Defendant filed a motion seeking an order declaring plaintiff to be a vexatious litigant on September 29, 2003, and then a motion to dismiss as a sanction against plaintiff for failing to serve his opposition on defendant's counsel on April 28, 2004.  (Docs. 69-71, 90-92.)  Plaintiff opposed the vexatious litigant motion on December 5, 2003, and the motion to dismiss on May 19, 2004.  (Docs. 78, 99.)  On May 18, 2004, defendant filed one document which served as his reply in the vexatious litigant motion

///

1   proceedings and a supplement to his motion to dismiss. (Docs. 96, 97.) On June 7, 2004, plaintiff

2   filed a surreply addressing defendant's supplement to the motion to dismiss. (Doc. 102.)

3           On January 5, 2004, following the filing of the vexatious litigant motion and the opposition

4   thereto, defendant, via his counsel Senior Deputy County Counsel Bruce B. Johnson, Jr. with the

5   Fresno County Counsel's Office, notified the court that he had not been served with plaintiff's

6   opposition and requested an order compelling plaintiff to serve him with the opposition. (Docs. 80-

7   82.) Plaintiff opposed defendant's request for an order compelling service on February 2, 2004, and

8   supplemented his opposition on February 9, 2004. (Docs. 85, 86.) Plaintiff's position was that he

9   did in fact serve defendant's counsel with the opposition, that he should not be made suffer having

10  to re-serve the opposition, and that defendant's failure to timely reply should not be excused. (Doc.

11  85, 3:18-4:12 & 4:28-5:4.) In his supplement, plaintiff supplied a copy of the prison mail log with

12  the relevant sections highlighted, insisted he served the opposition on defendant, argued that

13  defendant should not be allowed to "circumvent the Local Rules" or "mislead" the court into

14  believing plaintiff did not send his opposition, and characterized defendant's position as "untrue"

15  and "without merit." (Doc. 86.)

16          On March 12, 2004, the court found plaintiff's documentary evidence demonstrated that

17  plaintiff did not serve defendant's counsel with the opposition and instead served the Attorney

18  General's Office, and the court ordered plaintiff to serve his opposition on defendant's counsel.

19  (Doc. 87.) Thereafter, in his May 18 reply to plaintiff's opposition to his motion for a declaration

20  of vexatiousness, defendant characterized plaintiff's behavior as obstinate and plaintiff's argument

21  as frivolous, pointing out that the evidence plaintiff submitted in support of his opposition to an

22  order compelling service of the opposition brief demonstrated that plaintiff had in fact failed to serve

23  the opposition on defendant's counsel. (Doc. 96, 2:9-15.) Plaintiff then filed a surreply which failed

24  to address or even acknowledge that argument in defendant's reply, and which asserted that plaintiff

25  always acted in good faith and did not intentionally disobey court orders. (Doc. 102.)

26          With respect to these events, the court stated as follows in the F&R and as reproduced in the

27  Order to Show Cause:

28  ///

4

On March 12, 2004, after reviewing plaintiff's opposition and supplemental opposition, the court ordered plaintiff to re-serve his opposition on defendant's counsel. (Doc. 87.)  The evidence submitted by plaintiff in support of his argument that he did in fact serve his opposition on defendant's counsel established that plaintiff served the opposition on the Attorney General's Office. (Id.)  Defendant is represented, however, by the Fresno County Counsel's Office, not the Attorney General's Office.  In his opposition to the motion to compel re-service, plaintiff argued vehemently that he served his opposition on defendant's counsel, that defendant had ample time to file a reply, that "[p]laintiff should not be made to suffer the inactions of defendant," and that defendant's position was without merit. (Docs. 85, 86.)  Plaintiff further argued that defendant should not be allowed to circumvent the Local Rules or mislead the court. (Doc. 86.)  In support of his opposition, plaintiff submitted his prison mail log and highlighted the relevant sections of the log. (Doc. 86.)

Plaintiff's vehemence is remarkable given that the very sections highlighted by plaintiff demonstrate that plaintiff served the Attorney General's Office rather than the Fresno County Counsel's Office.  It is plaintiff's position on this issue, not defendant's, that is wholly without merit.  The erroneous service of the opposition to the vexatious litigant motion on the Attorney General's Office may well have been inadvertent.  However, plaintiff's meritless position in his opposition to the motion to compel re-service that he served defendant's counsel, in the face of his own highlighted evidence demonstrating that he served the wrong person <u>and</u> the certificate of service attached to the opposition demonstrating that plaintiff was aware that defendant's counsel was Fresno County Counsel, constitutes bad faith.  Moreover, plaintiff's inability or unwillingness to concede in his surreply that it was he, not defendant, who erred in this matter, is disturbing.  Rather than concede that his position in his opposition to the motion to compel re-service was in error, plaintiff fails to address that particular argument set forth by defendant and argues instead generally that he has never acted in bad faith.  Such a position, in the face of the record on this issue, constitutes bad faith in and of itself.

(Doc. 109, 10:15-27; Doc. 198, 2:25-3:4.)

        b.   <u>Plaintiff's Failure to Serve April 9 Filing on Defendant's Counsel</u>

The second incident, which occurred after plaintiff had been placed on notice that he must ensure he is serving his filings on the correct defense counsel, involved another misdirected service. In its order of March 12, 2004, the court stated that "[a]ccording to the mail log, plaintiff sent mail to the Office of the Attorney General for the State of California on December 2, 2003.  This case is being defended by the Fresno County Counsel's Office, not the State Attorney General's Office.[3] Although plaintiff served his opposition, plaintiff did not serve the correct person or office, which would explain why defendant's counsel did not receive it." (Doc. 87, 2:7-10.)  Thereafter, on April 9, 2004, plaintiff filed a request for an extension of time.  (Doc. 88.)  The certificate of service

---

[3] Defendant's counsel is Senior Deputy County Counsel Bruce B. Johnson, Jr.

attached to the request stated that it had been served by mail on the Attorney General's Office.  (Id.)

Defendant raised this issue and notified the court that he had not been served with this filing in his

motion to dismiss of April 28, 2004.  Plaintiff did not address the issue in his subsequent response

to the motion to dismiss.

In its Findings and Recommendations, and as reproduced in the Order to Show Cause, the

court stated, in relevant part:

> The certificate of service attached to plaintiff's April 9 request for an extension of
> time states that the filing was served on C. L. Picciano at the Attorney General's
> Office.  (Doc. 88.)
>
> [D]efendant's contention that he did not receive the request for an extension of time
> coupled with the fact that the attached certificate of service states that it was served
> on the Attorney General's Office allows the court to conclude that plaintiff did not
> serve the request on defendant's counsel and instead again erroneously served the
> Attorney General's Office.
>
> Plaintiff offers no defense for his action, choosing not to address the issue of service
> of the request specifically and to stick with his general assertion that he has never
> done anything wrong.[4]  (Doc. 102.)  In light of the fact that at the time plaintiff served
> his April 9 request, his previous error concerning service of his opposition on the
> Attorney General's Office rather than the County Counsel's Office had been brought
> to his attention in the court's order of March 12, 2004, plaintiff's conduct is
> tantamount to bad faith.  Plaintiff may not continue to blithely make the same service
> errors after said service error has been brought to his attention.

(Doc. 109, 11:8-9 14-22 & 12:1-2.)

c.      Plaintiff's Response to the Order to Show Cause

In his response to the Order to Show Cause, plaintiff states "he is a documented mental health

patient who during the . . . [relevant] (3) month period was suffering from documented, long-lasting

and pervasive unremission [sic] of mental health conditions that suffered recent change and increase

of psychiatric medications . . . ."  (Doc. 206, 1:24-2:1.)  In addition, plaintiff states that he was

"actively engaged" in litigating three other civil rights actions in federal court.  (Id., 2:2-5.)  As a

result, plaintiff contends he was confused and his "psychological psychosis" caused him to be unable

to articulate coherently and to conclude that defendant was "up to shenanigans."  (Id., 2:5-15.)

Plaintiff denies his misrepresentation to the court was intentional or the product of bad faith, and

---

[4] For the sake of clarity of the record, the court points out that plaintiff did specifically reference service
issues with respect to the notice of change of address and the opposition to the vexatious litigant motion.  Plaintiff's
surreply is silent, however, on the specific issue of service of the request for an extension of time.

1  argues he should not be sanctioned for conduct that was unavoidable due to his psychological

2  impairment. (Id., 2:18-22.) In support of his position, plaintiff submits a number of medical records.

3  (Id., Exhibits 1, 5.)

4  In addition, plaintiff contends that he is unable to read, write, or memorize during the periods

5  in which his mental illness is not in remission, with said periods occurring regularly during March,

6  May, and December of each year, coinciding with commemoration of the deaths of plaintiff's mother

7  and daughter. (Id., 7:2-5.)  Plaintiff contends that during these periods, he suffers from paranoid

8  schizophrenia, including auditory hallucinations. (Id., 7:6-8.)  Plaintiff contends that the court was

9  placed on notice of his disabilities by letter dated October 16, 2002, in which Marylls Emerson, a

10  DDP teacher at the California Substance Abuse Treatment Facility and State Prison-Corcoran, set

11  forth the disabilities plaintiff was claiming and the accommodations plaintiff was requesting. (Id.,

12  6:23-7:1; Exhibit 4, pg. 2.)  Plaintiff alleges that his disabilities render him confused and logically

13  unbalanced with memory lapses, incoherent, and/or incapacitated. (Id., 7:11-18.) Plaintiff contends

14  that these disabilities were affecting him during the period of time between April 9 and 22, 2004,

15  but that he did serve his opposition on defendant on May 14, 2004, in compliance with the court's

16  order to do so. (Id., 7:22-26.)

17  Plaintiff's reference to the number of civil actions he was litigating is unpersuasive.

18  Engagement in litigation of other cases does not serve to excuse misbehavior in this case.  The court

19  notes that the litigation referenced by plaintiff involved suits voluntarily filed by plaintiff.

20  Turning to plaintiff's mental health issues, plaintiff's documentary evidence demonstrates

21  that on May 28, 2003, he was evaluated and found to be fully oriented and stable with logical

22  thought process. (Exhibit 5, pg. 1.) A progress note dated November 21, 2003, describes plaintiff's

23  overall general condition as stable.  (Exhibit 5, pg. 3.)   Plaintiff also submitted his psychiatric

24  progress notes from January 6, 2004, and February 3, 2004.  (Exhibit 1, pgs. 1-2.)  However, these

25  notes only set forth plaintiff's medication and one notation indicating plaintiff suffers from episodic

26  hallucinations. (Id.)  Finally, on February 17, 2004, an entry in plaintiff's medical records reveals

27  plaintiff was being seen for administrative segregation clearance and complained of his medication

28  ///

1   not working.  (Exhibit 5, pg. 2.)  Plaintiff appeared depressed but cooperative and with a logical

2   presentation.  (<u>Id</u>.)

3           Although the evidence submitted by plaintiff supports his position that he has some mental

4   health problems, manifested in part at times by hallucinations, and that plaintiff receives medication,

5   the evidence does not support plaintiff's argument that his mental health problems are or were so

6   severe that he was incapacitated or otherwise incapable of being held responsible for his actions

7   during the time periods in which his conduct was found to be sanctionable by the court.

8           A review of the record in this case belies plaintiff's argument that he is so mentally impaired

9   at times that he cannot be held responsible for his misrepresentations to the court and other abusive,

10  bad faith litigation conduct.  On December 5, 2003, plaintiff filed his opposition to defendant's

11  vexatious litigant motion.  The opposition, which was accompanied by voluminous marked exhibits

12  and a certificate of service stating it was served on defendant's counsel, was ten pages long and

13  responsive to the arguments in defendant's motion.  (Doc. 78.)  In response to defendant's motion

14  for an order compelling service of the opposition, plaintiff filed a five-page opposition and a two-

15  page supplement with a copy of the prison mail log with the relevant sections highlighted.  Although

16  plaintiff's position in the opposing papers was without merit, plaintiff's argument was not incoherent

17  or illogical and was in no way suggestive of an individual grappling with issues of impairment so

18  severe they excused the meritless position taken in the filings.  Subsequently, on April 9, 2004,

19  plaintiff filed the request for an extension of time which again listed the Attorney General's Office

20  on the certificate of service.  (Doc. 88.)  Again, the request was on point and clear.

21          Plaintiff asks the court to believe that while he was capable of filing coherent documents

22  responsive to issues at hand and accompanied by exhibits during this time period, he was so

23  incapacitated by mental issues that he cannot be held accountable for the groundless position he took

24  in one of the filings, for his subsequent failure to concede that his position was groundless, or for

25  repeating the service error he was warned about only weeks earlier.  A reading of the filings in

26  question simply does not support plaintiff's position.  The actions taken by plaintiff in composing

27  and drafting the documents filed by plaintiff required more complex thought processes and planning

28  than did the actions taken by plaintiff which constituted bad faith conduct.  The court cannot and will

8

1  not conclude that while plaintiff was capable of the more complex litigation activities, he was

2  incapacitated when it came to the less complex litigation activities.

3        Finally, with respect to the letter written by Marylls Emerson, Ms. Emerson documented the

4  disabilities plaintiff was claiming and the accommodations plaintiff was requesting.  The letter did

5  not set forth any finding that plaintiff had the disabilities he was claiming and did not set forth any

6  opinion, other than plaintiff's, concerning the claimed disabilities.  Plaintiff filed a motion seeking

7  the appointment of counsel on December 13, 2002, and included that letter as an exhibit. (Doc. 46.)

8  In denying plaintiff's motion on January 21, 2003, the court considered plaintiff's argument

9  concerning his disability and considered the letter at that time.  (Doc. 47.)  The letter, although

10  supportive of plaintiff's position that he claims disabilities, is not evidence that plaintiff has the

11  disabilities he claims or, more importantly, that plaintiff suffers problems so severe that he cannot

12  he held accountable for his actions.  As documented in this subsection, plaintiff's filings reveal an

13  individual more than capable of actively and aggressively litigating this action.

14        The court previously found that plaintiff acted in bad faith when he took the unmeritorious

15  position that he had correctly served his opposition on defendant's counsel, refused to concede his

16  error, and again served the wrong person after having been notified of the issue.  Nothing in

17  plaintiff's response to the Order to Show Cause persuades the court that plaintiff should not be

18  sanctioned for his conduct.  As set forth in the Order to Show Cause, the court recommends (1)

19  plaintiff be formally reprimanded for serving his filing of April 9, 2004, on the Attorney General's

20  Office despite having been warned of the problem by the court in its order of March 12, 2004, and

21  (2) warned that monetary sanctions will be assessed against him if the violation occurs again.  With

22  respect to his unmeritorious position concerning service of his opposition and his subsequent failure

23  to concede his error, the court recommends (1) plaintiff be ordered to pay $102.70 to the Fresno

24  County Counsel's Office, which is the cost incurred in filing the motion to compel service of the

25  opposition,[5] and (2) plaintiff be assessed sanctions in the amount of $250.00, payable to the court,

26  ///

27

28      [5] Doc. 208, Johnson Dec., ¶2.

for making false representations in his opposition to defendant's motion to compel service, and for making false representations and failing to concede his error in his surreply.

 2.  Plaintiff's Motion for Entry of Default and for Order Deeming Affirmative Defenses Waived

 After the issuance of the F&R recommending plaintiff be ordered to show cause why sanctions should not be imposed against him for bad faith conduct, and after the issuance of Judge Coyle's order adopting the F&R in full, plaintiff filed three motions that the court believed were in bad faith and merited sanctions.  Accordingly, when the court issued the Order to Show Cause why sanctions should not be imposed for the conduct set forth in subsection 1 of this F&R, it also included the conduct relating to those three motions.

 a.  Motion for Order Deeming Affirmative Defenses Waived

 Defendant was personally served on November 7, 2002, and filed an answer to plaintiff's second amended complaint on December 3, 2002.  (Docs. 44, 45.)  Almost two years later, on September 29, 2004, plaintiff filed a motion seeking an order requiring defendant to amend his answer. (Doc. 141.) Defendant filed a statement of conditional non-opposition, noting that plaintiff did not seek relief via a recognized motion but conceding that his answer fell short of the requirements of Federal Rule of Civil Procedure 8(b) with respect to his general denial. (Doc. 147.) Defendant submitted a proposed amended answer. (Id.) Plaintiff filed a reply in which he contended the proposed amended answer was still deficient. (Doc. 148.)

 On July 5, 2005, the court issued an order addressing plaintiff's motion on the merits, although it too noted that plaintiff was not seeking relief via a recognized motion. (Doc. 171, 5:6-11.)  The court agreed with the parties that the answer fell short of Rule 8(b) requirements, but disagreed with plaintiff that the proposed amended answer was still deficient. (Id., 5:17-24.) The court granted in part and denied in part plaintiff's motion and directed defendant to file his proposed amended answer within fifteen days, which defendant did. (Id., 5:25-6:7; Doc. 173.)  Unwilling to let go of the issue, on October 20, 2005, plaintiff filed a motion asserting he had been harmed by the filing of the amended complaint and seeking an order deeming defendant's affirmative defenses waived. (Doc. 190.)  In its order denying the motion, with prejudice, the court stated as follows:

[With respect to plaintiff's original motion to compel amendment,] [b]oth defendant, in his statement of conditional non-opposition to plaintiff's motion, and the court, in its order, recognized that plaintiff did not move for relief via a recognized motion, as a motion to compel is not the proper vehicle by which to cause defendant to amend his answer, and that the Federal Rules of Civil Procedure do not provide for the remedy sought by plaintiff. (Docs. 147, 171.) Defendant, in agreeing to amend his answer despite the fact that plaintiff had no basis upon which to demand the relief he sought, acted in good faith. Plaintiff, by continuing to take issue with the amended answer, is not.

Plaintiff himself caused an amended answer to be filed by raising the issue and demanding that defendant be compelled to amend his answer. Plaintiff now asks the court to find that he has been harmed by the filing of the amended answer and to deem defendant's affirmative defenses waived. The court declines to do so. Plaintiff's position is utterly untenable.

Plaintiff complains defendant has prejudiced him by adding new affirmative defenses. The affirmative defenses set forth in the amended answer are identical to the affirmative defenses set forth in the original answer. It is therefore untrue that new affirmative defenses were added and the court finds that plaintiff's contention to the contrary is in bad faith.

The original answer contained a general two sentence denial. This insufficient general denial was the basis for plaintiff's request that defendant amend his answer. The amended answer was altered to include fifty-seven separately enumerated paragraphs of admissions, denials, and allegations. By necessity, it follows that it is these additions that plaintiff now quibbles with.

A party who affirmatively and voluntary comes before this court to request a form of relief will not be permitted to later complain that the relief he sought and won caused him prejudice and therefore entitles him to new and different relief. Abusive litigation tactics such as that displayed in the instant motion will not be tolerated. By first causing the amendment at issue to occur and then claiming to be aggrieved by the amendment, plaintiff has wasted this court's time and the defendant's time. It is clear that the court's warnings to plaintiff to conduct himself properly and in good faith have fallen on deaf ears. (E.g., docs 108, 109, 158.) Plaintiff is either unable or unwilling to (1) make the distinction between sound motions based on good faith and groundless motions that serve only to vex and harass this court and defendant, and (2) make tactical decisions accordingly.

(Doc. 194, 2:5-3:5.)

b.    Motion for Entry of Default

On October 20, 2005, the same day that he filed the motion claiming prejudice and seeking to deem defendant's affirmative defenses waived, and almost three years after defendant answered the amended complaint, plaintiff filed a motion seeking entry of default. (Doc. 188.) The court found the motion to be without merit given that although defendant's original answer was three days overdue, the window within which plaintiff had the opportunity to seek entry of default closed on December 3, 2002, when defendant filed his answer. (Doc. 193.) The court denied plaintiff's

11

1  motion with prejudice and notified plaintiff that because his motion was frivolous, he would be

2  ordered to show cause in a separate order why sanctions should not be imposed.  (Id.)

3                         c.      Plaintiff's Response

4          In the Order to Show Cause, in addressing both the motion to have defendant's affirmative

5  defenses deemed waived and the motion for entry of default, the court stated:

6          Plaintiff was placed on notice via the court's orders issued on October 31, 2005, that
          the court was of the opinion that the motions were frivolous and that plaintiff acted
7          in bad faith by making a false representation to the court.  With respect to the motion
          for entry of default, the motion was egregiously untimely, having been filed almost
8          three years after defendant filed his answer and was utterly baseless given that
          defendant already filed an answer.  The [initial] motion seeking an order compelling
9          defendant to amend his answer was filed almost two years after defendant filed his
          answer.  Despite this, defendant agreed to amend his answer.  In the order addressing
10         those issues, the court rejected plaintiff's contention that the proposed amended
          answer was still deficient.  (Doc. 171.)  Despite this, plaintiff yet again took issue
11         with the amended answer, misrepresenting the contents of the amended answer and
          then painting himself as the aggrieved party, prejudiced by the contents of the
12         amended answer as misrepresented in his motion.

13         The court concludes that both the motion seeking entry of default and the motion
          seeking an order deeming defendant's affirmative defenses waived were filed in bad
14         faith.  The timing and the content of the motions are demonstrative of a plaintiff who
          pours over the entire case record repeatedly, mining it for any issue, new or old, to
15         raise and/or rehash via motion, regardless of the timeliness, the meritoriousness, or
          the existence of any real prejudice to plaintiff.  Accordingly, by this order, plaintiff
16         will be provided with the opportunity to be heard regarding the conduct and the
          assessment of the sanctions, the form of which is discussed below in subsection 3.

17
   (Doc. 198, 6:8-25.)
18
           In his response, plaintiff contends that defendant conceded in his statement of conditional
19
   non-opposition that his answer was defective and therefore was not entitled under any circumstance
20
   to make a belated attempt at filing an answer conforming to Rule 8.  (Doc. 206, 2:26-3:4.)  Plaintiff
21
   also contends that regardless of his own conduct in seeking to address the issue, the wrong started
22
   with defendant, who, via his licensed attorney, filed a defective responsive pleading with no
23
   evidentiary support, which was not well-grounded in fact, and which was "interposed" for improper
24
   purpose, including misleading plaintiff, all of which has been overlooked by the court.  (Id., 3:4-11.)
25
   Plaintiff further contends that defendant knowingly let the deficient pleading stand and then "bashed"
26
   plaintiff for bringing the matter to the court's attention.  (Id., 3:12-17.)
27
   ///
28

                                        12

Plaintiff contends that defendant's conduct warranted Rule 11 sanctions and the court obviously recognized this but glossed over defendant's impropriety when ruling on plaintiff's motion. (Id., 4:6-15.) Plaintiff contends that "[i]f in fact as the court has stated . . . the affirmative defenses set forth in the amended complaint are identical to the affirmative defenses set forth in the original answer . . ," none of the relief sought by plaintiff and granted in part by the court has been satisfied via the amended answer. (Id., 4:18-23.) Plaintiff also contends that regardless of the amendments made to the answer by defendant, plaintiff should be able to seek any and all relief necessary to counter the amended answer because defendant caused the need for an amended answer, a point overlooked by the court. (Id., 4:24-5:1.) Finally, plaintiff contends that without specific guidance from the Federal Rules of Civil Procedure on how to proceed, or any other instructive materials, plaintiff had no choice but to seek redress from the court for the deficiencies he identifies in defendant's answer. (Id, 5:2-14.)

With respect to his motion for entry of default, plaintiff contends that once service of process is effected, defendant must answer or risk default under Rule 12. (Id., 3:22-25.) Plaintiff contends that he simply followed the Federal Rules, which do not state that the motion advanced by plaintiff amounted to bad faith. (Id., 3:27-4:6.)

Once again, plaintiff's response demonstrates his unwillingness to focus in on the precise issues giving rise to the possible assessment of sanctions or recognize the absence of support for his position. In his original motion, plaintiff sought an order compelling defendant to either admit or deny the allegations set forth in the paragraphs of plaintiff's amended complaint. (Doc. 141, 1:18-20, 2:7-11, 2:24-3:12.) Despite the absence of legal authority for plaintiff's "motion to compel," the court partially granted the motion in light of defendant's conditional non-opposition and in recognition of defendant's failure to admit or deny plaintiff's allegations with specificity. In his reply to defendant's conditional non-opposition to his motion to compel, plaintiff contended that defendant's amended answer was still deficient. The court addressed this contention in its order and denied plaintiff's motion in part to the extent plaintiff sought further amendment to the amended answer. Thus, although plaintiff did not prevail on his request for further amendment to the amended answer, plaintiff did prevail on his original motion for an order compelling an amended

1   answer.  Plaintiff obtained the relief he sought in his motion when his motion for an order requiring

2   defendant to set forth specific admissions or denials was granted and defendant filed an amended

3   answer setting forth specific admissions and denials.  These actions were not deemed to be bad faith

4   by the court and are not the subject of the order to show cause.  Rather, plaintiff's subsequent actions

5   are the subject of the order.

6          After obtaining the specific relief he sought - an amended answer setting forth specific

7   admissions and denials - plaintiff claimed to be aggrieved by the filing of the amended answer

8   because it contained new affirmative defenses, an assertion which is untrue.  Plaintiff now argues,

9   after moving for an amended answer and prevailing on his motion, that defendant should under no

10  circumstance have been permitted to file a belated answer in conformance with Rule 8.[6]  Plaintiff's

11  present position is entirely at odds with his earlier position that defendant be compelled to file an

12  amended answer.  Plaintiff's assertion that defendant has engaged in intentional misconduct with

13  respect to the filing of the original answer is lacking any support and plaintiff's assertion that

14  defendant "bashed" plaintiff for seeking redress from the court is utterly groundless and is harassing.

15  Sanctions against plaintiff are not being considered on the ground that plaintiff initially sought to

16  compel an amended answer or that plaintiff asserted in his reply that the proposed amended answer

17  was still deficient.  Rather, plaintiff faces sanctions because he thereafter sought an order deeming

18  defendant's affirmative defenses waived on the ground that defendant prejudiced him by amending

19  his answer and by adding new affirmative defenses in his amended answer.  Plaintiff's assertion that

20  the amended answer contained new affirmative defenses, thereby prejudicing him, constituted a

21  blatant misrepresentation.  Even in his response to the Order to Show Cause, plaintiff refuses to

22  concede his blatant misrepresentation.  Further, in light of the fact that plaintiff initiated the

23  amendment of the answer, the court found plaintiff's subsequent position in his motion that he was

24  aggrieved to be abusive.  Plaintiff's response contains no arguments that persuade the court it

25  mistakenly concluded plaintiff acted in bad faith.

26  _____

27        [6] Although plaintiff may, because he believes defendant's amended answer is still deficient, quibble
    semantically over whether he got the relief he sought, plaintiff sought an order compelling an amended answer that
28  complied with Rule 8 and plaintiff received that relief when defendant submitted an amended answer that the court
    found complied with Rule 8.

1   With respect to his motion for entry of default, plaintiff offers no satisfactory justification

2   for his action.  Defendant was not in default when the motion for entry of default was filed and had

3   made an appearance in the action almost three years earlier.  Plaintiff's motion was baseless and

4   extraordinarily untimely.  The fact that the Federal Rules did not place plaintiff on notice that such

5   a motion had no merit offers no defense.

6                  3.      Plaintiff's Motion Seeking Leave to Amend

7          Finally, on July 5, 2005, the court issued an order denying plaintiff's motion for leave to

8   amend filed on September 27, 2004.  (Docs. 140, 171.)  In the order, the court discussed claim

9   accrual, the statute of limitations, the tolling provision for incarcerated persons, and relation back

10  under Federal Rule of Civil Procedure 15.  (Doc. 140.)  The court found that the claim plaintiff

11  wished to add against three new defendants was barred by the statute of limitations and that relation

12  back to the original complaint under Rules 15(c)(2) and (3) was not available to plaintiff.  (Id.)

13         On August 22, 2005, plaintiff filed another motion seeking leave to amend to add new claims

14  against new parties.  (Doc. 183.)  On April 18, 2006, in its order denying plaintiff's motion, the court

15  noted that although the new motion did not involve the same proposed claims and parties as

16  addressed in plaintiff's prior motion to amend, the new motion revisited the same issues.  (Doc. 197,

17  3:3-5.)  The court found that plaintiff's proposed new claims were barred by the statute of limitations

18  and relation back under Rule 15(c)(1) and (2) was not available to plaintiff.  (Doc. 197.)  The court

19  further found the motion to be frivolous, abusive, and in bad faith, stating:

20         In light of the facts that the court issued a ruling on a similar motion on July 8, 2005,
           and that the court set forth in that order the legal principles which are applicable to
21         plaintiff's instant motion, the court finds the instant motion to be yet another example
           of plaintiff's abuse of the legal process, including unnecessary taxation of the
22         resources of this court and the County of Fresno.  In the instant motion plaintiff fails
           to acknowledge the prior order and its discussion of the statute of limitation, the
23         tolling provision, and relation back, and fails to set forth any argument distinguishing
           the basis for adding these new claims and defendants from that of his previous
24         unsuccessful attempt to add new claims and defendants.

25         Further, on March 28, 2002, plaintiff's due process, medical malpractice, and
           intentional infliction of emotional distress claims against defendant Vang, stemming
26         from plaintiff's encounter with Vang on April 3, 2000, were dismissed from this
           action, with prejudice, for failure to state a claim upon which relief may be granted.
27         (Docs. 28, 21.)  Despite this ruling, plaintiff sought leave to amend to add due
           process and medical malpractice claims stemming from his encounter with Vang on
28         April 3, 2000, without any acknowledgment that the claims were previously

1   dismissed, with prejudice.  (Doc. 22, Amend. Comp., ¶¶24-25, 48-51; Doc. 183,
2   "Rule 15(c)(1) and (2) Amendment Adding New Claims and New Defendants," p.
    3 ¶24(a), p. 4 ¶25(a), p. 6, ¶33(e).)  It is this type of evasive maneuvering on the part
    of plaintiff which needlessly taxes the resources and patience of this court.  Plaintiff
3   sets forth no argument explaining or justifying his attempt to amend to add claims
    which were barred pursuant to a previous court order.  In light of the previous
4   dismissal of the claims against defendant Vang and the previous order denying
    plaintiff's motion for leave to amend to add new claims and parties, the court finds
5   plaintiff's current motion to amend to be frivolous, abusive, and in bad faith.

6   (Doc. 197, 6:5-26.)

7       In his response to the Order to Show Cause, plaintiff contends that he was released from jail

8   on February 8, 2005, and rearrested on March 16, 2005.  Plaintiff contends he was brought back to

9   the Solano County Jail "without any previously filed federal court civil litigation, documents, items,

10  pleadings, court orders or any information what-so-ever . . . ." (Doc. 206, 5:21-23 (emphasis in

11  original).)  Plaintiff contends that his attempts to have his legal material brought to the jail were

12  impeded by staff.  Plaintiff contends that as a result, he does not possess all of the necessary material

13  to determine what rulings the court has made, etc., and was acting in good faith when he sought

14  leave to amend.

15      Assuming the truth of plaintiff's contention that he lost possession of some of his legal

16  material as a result of his release from and return to custody, this property loss does not excuse

17  plaintiff's conduct and the record contradicts plaintiff's proffered explanation that relevant legal

18  material was missing as a result of plaintiff's release from and return to custody.  First, one of the

19  issues raised by the court in its order denying plaintiff's motion for leave to amend was plaintiff's

20  failure to acknowledge the court's previous order denying a motion to amend, which set forth the

21  legal principles applicable to plaintiff's second motion, and plaintiff's failure to distinguish the basis

22  for adding new claims from the basis for adding new claims and defendants in his previously denied

23  motion.  That order was filed on July 8, 2005, less than seven weeks before plaintiff filed the second

24  motion to amend, and almost four months after plaintiff was re-incarcerated.  Thus, the order would

25  not have been with any property lost due to plaintiff's release from and return to custody.

26      Second, as plaintiff has previously been notified by the court, he is imputed with knowledge

27  of the court's rulings in this case, regardless of whether or not he is currently in actual possession

28  of the orders. (Doc. 108, 3:18-23.)  Plaintiff can reasonably be expected to keep track of what claims

against whom were set forth in his original complaint and what claims against whom remain

following screening orders and/or dispositive motions. Indeed, a review of the motion to amend at

issue here demonstrates that plaintiff was in fact aware of defendant Vang's dismissal from this

action. (Doc. 183, 2:27-3:2.) Thus, any attempt to justify his behavior on the ground that he did not

remember Vang had been dismissed because he no longer possessed the order dismissing Vang is

precluded by plaintiff's admission in the motion to amend that Vang had been dismissed.

Plaintiff's assertion that he acted in good faith in bringing the second motion to amend is

unpersuasive. The court finds that plaintiff acted in bad faith in (1) bringing another motion to

amend without acknowledging the order denying his previous motion to amend and without making

any attempt to distinguish the basis for his new motion from that of his previous motion, and (2)

attempting to add claims previously dismissed from the action with prejudice without any

acknowledgment or recognition of their previous dismissal. Given these actions and given that

plaintiff's proffered explanation is belied by a review of the relevant dates and a review of the

motion to amend itself, the court is compelled to conclude that plaintiff is unwilling to deviate from

the pattern of abusive litigation tactics, misrepresentations, and obstinate refusal to abandon

meritless positions even when confronted with the irrefutable evidence of their meritlessness.

### 4. Recommendation Regarding Form of Sanction

Concerning plaintiff's motion seeking entry of default, motion seeking an order deeming

defendant's affirmative defenses waived, and motion seeking leave to amend, the court informed the

parties in its Order to Show Cause that it intended to consider as sanctions either (1) the preclusion

of any further discovery in this action, including relieving defendant of the obligation to respond to

any outstanding discovery requests, and an order deeming the pleadings quieted, or (2) the dismissal

of this action with prejudice.[7]

///

_____

[7] In his response to the Order to Show Cause, defendant sets forth the costs incurred in responding to these motions. (Doc. 208, ¶¶3, 4.) Because plaintiff was not given notice and an opportunity to be heard concerning the assessment of these costs against him, they cannot be assessed at this time. If defendant wishes to file a motion seeking these costs as a sanction, he may do so. However, in light of plaintiff's failure to pay the costs already assessed and in light of the terminating sanction recommended herein, defendant may find it does not constitute the best use of resources.

"'[C]ourts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" Anheuser-Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995) (quoting Wyle v. R. J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983)). "[B]ecause dismissal is so harsh a penalty, it should be imposed only in extreme circumstances." Wyle, 709 F.2d at 589. "It is well-settled that dismissal is warranted where a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings . . . ." Anheuser-Busch, Inc., 69 F.3d at 348.

To determine whether to impose a severe sanction of dismissal or default, a court considers:

1.      The public's interest in expeditious resolution of litigation;

2.      The court's need to manage its docket;

3.      The risk of prejudice to the party seeking sanctions;

4.      The public policy favoring disposition of cases on their merits; and

5.      The availability of less drastic sanctions.

Valley Engineers, Inc. v. Electric Engineering Co., 158 F.3d 1051, 1057 (9th Cir. 1998), cert. denied, 526 U.S. 1064, 119 S.Ct. 1455 (1999). To evaluate the propriety of sanctions, a court looks "at all incidents of the party's misconduct," and "may consider prior misconduct when weighing" imposition of sanctions for subsequent misconduct. Adriana International Corp. v. Thoeren, 913 F.2d 1406, 1411 (9th Cir. 1990).

On June 23, 2004, the court issued an order granting defendant's motion to compel plaintiff's deposition and assessing monetary sanctions against plaintiff in the amount of $1,145.71 for refusing to cooperate at his deposition, payable to the Fresno County Counsel's Office within ninety days. (Doc. 108.) At his deposition, plaintiff responded to two background questions and then stated his intent to terminate the deposition on the ground that defendant had not obtained leave of court to depose him in prison, that he had not reviewed his records, and that he had served an objection to the deposition. (Id, 3:2-7.) In the order, the court stated, "Plaintiff's ground for refusing to cooperate at his deposition is wholly without merit, and the court considers plaintiff's decision to thwart the deposition to be a very serious matter. Defendant has a right to depose plaintiff, and the plaintiff's decision to interfere with that right is not one of insignificance." (Id., 4:7-10.) In the F&R

18

issued concurrently with the order, the court found that plaintiff's failure to cooperate at his deposition was tantamount to bad faith. (Doc. 109, 6:12-13.)

Plaintiff sought reconsideration of the order to pay $1,145.71, which effectively stayed the order until February 8, 2005, when Judge Coyle denied the motion for reconsideration. (Doc. 160.) More than a year has passed since plaintiff's motion for reconsideration was denied and the sanction amount became due, and as of the filing of defendant's response to the Order to Show Cause on July 14, 2006, plaintiff had yet to pay sanctions. (Doc. 208, Johnson Dec., ¶6.)

Despite having been assessed monetary sanctions for refusing to cooperate during his deposition and despite the issuance of the Findings and Recommendations and Order concerning plaintiff's bad faith conduct, under which plaintiff stood to be sanctioned via a formal reprimand and further monetary sanctions, plaintiff filed baseless motions seeking entry of default, seeking an order deeming defendant's affirmative defenses waived, and seeking leave to amend.

Then, after the issuance of the Order to Show Cause, plaintiff continued to demonstrate his unwillingness to abide by the orders of this court. In the Order to Show Cause, the court granted each party one opportunity to respond and specified that no further responses would be permitted. Despite governing language of such clarity that no room for misinterpretation was left, plaintiff sought an extension of time to file his reply to defendant's response. (Doc. 210.) When defendant objected on the ground that plaintiff's reply was not permitted under the court's order, plaintiff responded by insisting he had a right under Local Rule 78-230(m) to reply, despite the fact that Local Rule 78-230(m) applies to motions rather than the order at issue and despite the clear preclusion under the order against filing any further responses. (Docs. 212, 213.)

Finally, despite having made more than one blatant misrepresentation as documented in the Order to Show Cause, plaintiff's response to the order once again demonstrated plaintiff's unwillingness and inability to acknowledge his behavior. Instead, plaintiff asks the court to believe that despite a record amply demonstrative of plaintiff's ability to aggressively litigate, including filings submitted during the relevant time period, plaintiff was so mentally incapacitated that he was unable to recognize that he served the wrong attorney even though he prepared an opposition which included evidence of the misdirected service, and that he continued to be so mentally incapacitated

1    that in responding to defendant's reply raising the issue, he was unable to acknowledge his previous

2    misrepresentation, despite being able to respond to other issues and arguments made by defendant.

3    Plaintiff asks this court to believe that even though he sought amendment of the answer, he was

4    prejudiced by obtaining the very relief he sought and that defendant should never have been

5    permitted to amend.  Despite having blatantly misrepresented in his motion to deem defendant's

6    affirmative defenses waived that the amended answer contained new affirmative defenses which

7    caused him prejudice, plaintiff maintains his position that defendant is to blame and that the court

8    has overlooked this very basic fact.  Plaintiff asks the court to believe that he filed the motion to

9    amend in good faith because his re-incarceration in March of 2005 caused him to lose possession

10   of some legal material, despite the fact that one of the orders the court believed plaintiff should have

11   acknowledged and distinguished was not issued until July 8, 2005.  Plaintiff would also have this

12   court believe that he cannot be expected to remember which claims and defendants have been

13   dismissed, and that he did not knowingly attempt to add claims barred by prior orders, despite an

14   admission to the contrary in the motion to amend.

15          In denying plaintiff's motion to deem defendant's affirmative defenses waived, the court

16   stated, "It is clear that the court's warnings to plaintiff to conduct himself properly and in good faith

17   have fallen on deaf ears.  (E.g., docs 108, 109, 158.)  Plaintiff is either unable or unwilling to (1)

18   make the distinction between sound motions based on good faith and groundless motions that serve

19   only to vex and harass this court and defendant, and (2) make tactical decisions accordingly." (Doc.

20   194, 3:2-5.)  In concluding in its Order to Show Cause that both the motion seeking entry of default

21   and the motion seeking an order deeming defendant's affirmative defenses waived were filed in bad

22   faith, the court stated, "The timing and the content of the motions are demonstrative of a plaintiff

23   who pours over the entire case record repeatedly, mining it for any issue, new or old, to raise and/or

24   rehash via motion, regardless of the timeliness, the meritoriousness, or the existence of any real

25   prejudice to plaintiff."  (Doc. 198, 6:19-23.)  Plaintiff's disregard of the parameter of one response

26   each set by the court in its Order to Show Cause and plaintiff's response to the Order to Show Cause

27   itself show no deviation from the behavior giving rise to the court's concerns and comments.

28   ///

20

1    Plaintiff has engaged in a pattern of bad faith conduct, including refusing to cooperate at his

2    deposition, repeatedly filing frivolous and abusive motions, and making blatant misrepresentations

3    to the court on more than one occasion.  Neither the sanctions imposed by the court to date nor the

4    sanctions under consideration by the court had any effect on plaintiff's pattern of misbehavior, as

5    evidence by plaintiff's motion for entry of default, motion seeking an order deeming defendant's

6    affirmative defenses waived, motion to amend, reply to defendant's opposition to his motion seeking

7    an extension of time to file a reply to defendant's response to the Order to Show Cause, and his own

8    response to the Order to Show Cause.

9        This action has been pending since 2000, and plaintiff has needlessly taxed the resources of

10   this court and the County of Fresno, impugned the integrity of the court, verbally harassed and

11   attacked defendant's counsel with baseless accusations of misconduct, and jeopardized "the orderly

12   administration of justice."  Anheuser-Busch, Inc., 69 F.3d at 348 (quoting Wyle, 709 F.2d at 589).

13   Although both public policy and this court favor disposition on the merits, plaintiff's misconduct has

14   permeated and hijacked these proceedings for years.  The court has attempted lesser sanctions than

15   dismissal and has lesser sanctions than dismissal currently pending consideration.  Despite this,

16   plaintiff has not been dissuaded from continuing with his pattern of behavior.   Faced with the

17   opportunity to acknowledge and explain his misrepresentations, plaintiff offers more

18   misrepresentations, without "any sign of repentance or any indication that this pattern of behavior

19   would cease if the case were allowed to proceed."[8]  Sun World, Inc. v. Lizarazu Olivarria, 144

20   F.R.D. 384, 391 (E.D.Cal. 1992).  Based on an assessment of the misconduct at issue and the

21   continuing pattern of misconduct, the court finds that dismissal of this action with prejudice is more

22   _____

23      [8] Although not a basis for consideration of sanctions in this action, the court notes that plaintiff's pattern of
     manipulation and flagrant misrepresentation is not limited to his conduct in this action.  In case number 1:01-CV-
24   05192 AWI SMS (PC) Buford v. Wasco State Prison, the undersigned issued a Findings and Recommendations on
     September 14, 2006, recommending that plaintiff be sanctioned in the amount of $250.00 for wasting the court's
25   resources by filing a motion to amend in bad faith.  In case number 1:02-CV-06187 OWW DLB (PC) Buford v.
     Mounts, in arguing why a particular dismissal does not count as a strike under 28 U.S.C. § 1915(g) in an opposition
26   filed on September 11, 2006, plaintiff stated under penalty of perjury that he was released from custody on April 4,
     2000 and not returned to custody until May 11, 2000.  (Doc. 72, 11-16.)  Yet in this action, plaintiff alleges under
27   penalty of perjury in his amended complaint that he was released from custody on April 3, 2000, and returned to
     custody on April 4, 2000.  (Doc. 22, ¶¶25, 26.)  Plaintiff goes on to allege incidents which occurred on April 5,
28   2000, April 6, 2000, April 10, 2000, April 12, 2000, April 13, 2000, April 26, 2000, April 27, 2000, April 30, 2000,
     and May 10, 2000, while plaintiff was in jail.  (Id., ¶¶30-39.)  It is readily apparent that the ability to be truthful
     continues to elude plaintiff.

than warranted.  While the court does not undertake the imposition of dismissal as a sanction lightly, <u>Wyle</u>, 709 F.2d at 589, nothing short of dismissal with prejudice is appropriate.  <u>See</u> <u>Anheuser-Busch, Inc.</u> at 348.

C.  <u>Conclusion</u>

As set forth herein, it is HEREBY RECOMMENDED that:

1.  Plaintiff be (1) formally reprimanded for serving his filing of April 9, 2004, on the Attorney General's Office despite having been warned of the problem by the court in its order of March 12, 2004, and (2) warned that monetary sanctions will be assessed against him if the violation occurs again;

2.  Plaintiff be (1) ordered to pay $102.70 to the Fresno County Counsel's Office, which is the cost incurred in filing the motion to compel service of the opposition, and (2) assessed sanctions in the amount of $250.00, payable to the court, for making false representations in his opposition to defendant's motion to compel service, and for making false representations and failing to concede his error in his surreply; and

3.  This action be dismissed, with prejudice, based on plaintiff's bad faith conduct relating to the filing of motions for entry of default, for an order deeming defendant's affirmative defenses waived, and for leave to amend.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 15, 2006**                          **/s/ Sandra M. Snyder**
icido3                                                    UNITED STATES MAGISTRATE JUDGE